IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | Consolidated Under MDL DOCKET NO. 875 |
| JOHN T. BEREI, | E.D.Pa Civil Action No. 2:11-cv-60166-ER |
| Plaintiff, | |
| v. | Transferor District Court for the Southern District of New York |
| AIR & LIQUID SYSTEMS CORP., et al., | |
| Defendants. | |

**AIR & LIQUID SYSTEMS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Comes now, Defendant Air & Liquid Systems Corporation as successor by merger to Buffalo Pumps, Inc. (hereinafter "Buffalo Pumps")[1], by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, and this Court's Scheduling Order, hereby moves for summary judgment as to all of Plaintiffs' claims. In support of this motion, Buffalo Pumps states the following:

**I.   INTRODUCTION**

Plaintiff John Berei originally filed this action in the Supreme Court of New York, County of New York against multiple defendants, including Buffalo Pumps on March 27, 2012. This case was removed to the United States District Court for the Southern District of New York on June 14, 2012, and then transferred to the MDL in the United States District Court for the Eastern District of Pennsylvania on July 3, 2012.

Plaintiffs' claims in this matter are based on injuries allegedly sustained as a result of exposure to asbestos. Specific to Plaintiffs' claims against Buffalo Pumps, Plaintiffs allege that

---

[1] Buffalo Pumps, Inc. merged into Air & Liquid Systems Corporation on December 31, 2009. The former operations of Buffalo Pumps, Inc. now are conducted by the Buffalo Pumps Division of Air & Liquid Systems Corporation.

Mr. Berei was exposed to asbestos from 1946 to 1949 during his service in the U.S. Navy as a fire controlman.

Buffalo Pumps respectfully submits that it is entitled to summary judgment in this action because there is no evidence of any exposure to any asbestos from a product for which Buffalo Pumps is responsible.

## II. STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs allege that Mr. Berei developed mesothelioma as a result of exposure to asbestos from 1946 to 1949 during his service in the U.S. Navy, from 1960 to 1991 as a union carpenter, and while performing home renovations.

Mr. Berei's discovery deposition was taken on May 17, 18 & 31, 2012. Plaintiff testified that during his Navy service he was a fire controlman assigned to the USS Chelalis (AOG-48); the San Diego naval base; and Villejo, CA shipyard where he worked on the decommissioning of several unnamed U.S. Navy vessels. Mr. Berei alleges exposure to asbestos as a bystander while others performed maintenance and repairs on pipes, boilers, turbines, pumps, and valves. He admitted that pump maintenance and repair was never his responsibility, but nonetheless recalled the names of nine (9) pump manufacturers, including Buffalo Pumps. Mr. Berei alleges exposure to asbestos to pumps generally from other workers removing and installing gaskets, packing, and insulation in his presence[2]. However, Mr. Berei testified that he could not recall any occasion where he was present when work was specifically performed on a Buffalo Pump:

> Q. Okay. Specifically another one of the pump manufacturers you had mentioned was a manufacturer named Buffalo. Do you recall that testimony?
> A. Yes.

---

[2] See May 17, 2012 deposition testimony of John Berei, attached hereto as Exhibit "A" at 95:21-96:19 and 124:10-16) where Plaintiff identified Cranite, Goodyear, and Garlock as the manufacturers of gaskets used for pumps and Johns-Manville, Owens-Illinois, and Owens-Corning as the manufacturers of the insulation used on pumps.

> Q. And I know a lot of these questions are going to sound somewhat redundant. But could you tell me a ship or location where you observed a Buffalo pump?
> A. Probably in the shipyard. Vallejo.
>
> Q. Okay. So, not on the Chehalis?
> A. No. I don't recall.
>
> Q. There's several ships that you worked aboard in the shipyard. Correct?
> A. Yes.
>
> Q. So, you wouldn't be able to tell me which one, or ships that you saw any Buffalo pumps?
> A. No.
>
> **Q. Okay. And I understand, sir, that you're not a machinist mate. Do you ever recall observing any work performed on a Buffalo pump?**
> **A. I don't recall that.**
>
> Q. Okay. And, again, you wouldn't be able to tell me how many Buffalo pumps you saw?
> A. Numbers. No.

(See May 18, 2012 deposition transcript of John Berei, attached hereto as Exhibit "B" at 403:25-404:24) (emphasis added).

Since Mr. Berei does not recall any work being performed on a Buffalo pump, any allegation that he was exposed to an asbestos-containing product attributable to Buffalo Pumps is pure conjecture.

On re-direct, Plaintiff's counsel, using improper, leading questions, attempted to elicit testimony from Mr. Berei to contradict his prior testimony regarding Buffalo Pumps. During Plaintiff's counsel's redirect, Mr. Berei testified he could only identify two (2) pump manufacturers from his memory. Plaintiff's counsel then led him, over numerous objections, to identify seven (7) additional pump manufacturers, including Buffalo Pumps. Plaintiff's counsel then improperly led Mr. Berei, again over objection, into testifying that he was present for work

performed on all manufacturers' pumps despite the fact that Mr. Berei had earlier given contradictory testimony throughout the course of the deposition:

> BY MR. CHANDLER:
>
> Q   And do you recall the names of any of the pumps on which that work that you previously described was performed, in your presence?
> A   You've got to give me a specific time.
>
> Q   Just off the top of your head. What do you remember?
> A   Gould, Warren, I don't know. There a few of them. I don't know. I don't remember. Gould, Warren.
> …..
>
> BY MR. CHANDLER:
>
> Q   Would the names be any different from your -- from what you previously testified to at your last deposition?
>
> A   No. No. The ones I remember. Because I saw them often enough. The names were everywhere. Everywhere you went, you were exposed to it.
>
> Q   At your last deposition, you identified -- in addition to Goulds and Warren, you identified Aurora. Do you --
>
> ALL DEFENSE COUNSEL: Objection. Objection, leading.
> THE WITNESS: Oh, yeah. DeLaval, DeLaval, the Frenchy.
> BY MR. CHANDLER:
>
> Q   How about Gardner Denver, do you recall that?
> ALL DEFENSE COUNSEL: Objection.
> THE WITNESS: Gardner Denver. Yes, I do.
>
> MR. CHANDLER: Do you recall Ingersoll Rand?
> ALL DEFENSE COUNSEL: Objection.
> THE WITNESS: Ingersoll Rand.
>
> BY MR. CHANDLER:
> Q   Do you recall Northern?
> ALL DEFENSE COUNSEL: Objection.
>  THE WITNESS: Northern Pumps. Western. Western.
>
> BY MR. CHANDLER:

-4-

    Q   Do you recall Chicago pumps?
ALL DEFENSE COUNSEL: Objection.
MR. CHANDLER: Chicago.

BY MR. CHANDLER:
Q   Do you recall Byron Jackson pumps?
ALL DEFENSE COUNSEL: Objection.

MR. CHANDLER: Byron Jackson.
BY MR. CHANDLER:
Q   And do you recall Buffalo pumps?
ALL DEFENSE COUNSEL: Objection, leading.
THE WITNESS: Buffalo. Chicago, Buffalo pumps.

BY MR. CHANDLER:
Q   So essentially, the pumps that you identified at your last two days of testimony, those pumps, you recall seeing the work done in the manner you just previously described?
ALL DEFENSE COUNSEL: Objection, form, misstates prior testimony.
THE WITNESS: Yes.

(See May 31, 2012 discovery deposition transcript of John Berei, attached hereto as Exhibit "C" at 501:16-25; 502:8-504:6).

Mr. Berei's response to his attorney's improper, leading, overly broad, compound, hearsay statement regarding his presence for work performed on all manufacturers pumps is not based on his personal knowledge and should not be considered by this Honorable Court. The law is clear in that plaintiff bears the burden of proving that he was exposed to *each* defendant's product and that the defendant's product was a substantial factor in plaintiff's injury.[3] Mr. Berei testified from personal knowledge that he could not recall being present when work was performed on a Buffalo pump. Consequently, there is no admissible evidence of record to suggest that Plaintiff ever worked with or around any asbestos-containing products attributable to Buffalo Pumps; therefore, summary judgment is warranted in the instant matter.

---

[3] Lindstrom v. A-C Product Liability Trust, 424 F. 3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 Fed. Appx. 371, 375 (6th Cir. 2001).

## III. APPLICABLE LAW

Motions for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure are to be decided purely on the record as it exists at the time the motion is filed. In deciding these motions, the Court should consider neither potential evidence or bald assertions contained in the pleadings, nor indulge in conjecture as to what speculative evidence may support a plaintiff's claims. See Solomon v. Soc'y of Automotive Eng'rs, 2002 WL 1754409, at *1 (3d Cir. July 30, 2002).

The rationale behind Federal Rule of Civil Procedure 56 is to promptly dispose of cases. See Advisory Committee Note to Rule 56 (stating "the changes are in the interest of more expeditious litigation."). "The very mission of the summary judgment procedure is to pierce the pleadings and assess the proofs in order to see if there is a genuine need for trial." Id. This is especially significant in multi-party litigation concerning exposure to asbestos.

As the United States Supreme Court stated in Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986):

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon a motion, against a party who fails to make a showing sufficient to establish the existence of an element *essential to the party's case*, and on which the party will bear the burden of proof at trial.

Id. In other words, the moving party on a motion for summary judgment does not bear the burden of negating the non-moving party's claims.

### a. Application of Maritime Law

For purposes of product nexus and causation standards, maritime law should govern Mr. Berei's cause of action against Buffalo Pumps. This Court's ruling on February 25, 2011,

granting Buffalo Pumps' summary judgment motion in the <u>Delatte</u> case[4], is particularly instructive on several key issues in the instant matter. The Court found that application of admiralty or maritime law is a question of subject matter jurisdiction under Article III of the U.S. Constitution, which grants federal courts the power to hear "all cases of admiralty and maritime jurisdiction."[5]

A party seeking to invoke that jurisdiction must satisfy conditions of 1) location and 2) of connection with maritime activity.[6] In the context of a toxic tort case, the location test is resolved by consideration of whether the alleged exposures to the toxic substance occurred onboard a naval vessel on the navigable waters or not.[7] In finding in <u>Delatte</u> that the location test was satisfied, this Court noted the United States Supreme Court's ruling in <u>Sisson v. Ruby</u> that a ship docked at a shipyard satisfies the location test.[8] Accordingly, in the instant case, Mr. Berei is alleging exposure to asbestos as a result of his presence for work performed by others on equipment during his U.S. Navy service aboard Naval vessels, the location test is satisfied. This Court in <u>Delatte</u> then turned its analysis to the second prong of the test, which begs the question of whether the activity giving rise to the incident is substantially related to traditional maritime activity.[9] This Court found that the activities, Buffalo Pumps' sale and distribution of pumps for use aboard marine vessels and the plaintiff's alleged installation and maintenance of those pumps aboard ships, constituted a maritime activity under the United States Supreme Court's

---

[4] See Exhibit "D" - <u>Delatte v. A.W. Chesterton</u>, No. 2:09-69578 Order (E.D. Pa. Feb. 2011).
[5] U.S. Const., art. III, §2
[6] <u>Grubart v. Greta Lakes Dredge & Dock Co.</u>, 513 U.S. 527, 534 (1997)
[7] <u>Lambert v. Babcock & Wilcox, Co.</u>, 70 F. Supp. 2d 877, 884 (S.D. Ind. 1999)
[8] <u>Sisson v. Ruby</u>, 497 U.S. 358, 362-63 (1990)
[9] <u>Sisson v. Ruby</u>, 497 U.S. 358, 364 (1990)

characterization of ship repair as a "maritime activity."[10] The instant case presents an identical fact pattern and thus compels the same findings.

### b. Causation Standards Under Maritime Law

In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant that 1) he was exposed to the defendant's product, and 2) the product was a substantial factor in causing the injury he suffered.[11] Substantial factor causation is determined with respect to each defendant separately.[12]

Maritime law incorporates traditional "substantial factor" causation principles, and courts often look to the Restatement of Torts (2nd) for guidance on the definition of that term. The comments to the Restatement indicate that the word "substantial" in this context "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility."[13]

In Lindstrom, the Court of Appeals affirmed the District Court's grant of summary judgment in the defendant manufacturer's favor noting that "there was insufficient evidence to connect [plaintiff] with any [defendant manufacturer]'s product with asbestos" and that plaintiff "almost certainly could not have handled the original packing or gasket material, and this compels the conclusion that any asbestos that he may have been exposed to in connection with a [defendant manufacturer]'s product would be attributable to some other manufacturer."[14] The

---

[10] See Exhibit "D", p. 4
[11] Lindstrom v. A-C Product Liability Trust, 424 F. 3d 488, 492 (6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21 Fed. Appx. 371, 375 (6th Cir. 2001).
[12] Stark, 21 Fed. Appx. at 375
[13] Restatement (Second) of Torts, §431, Comment "a" (1965)
[14] Lindstrom, 495

court in Lindstrom affirmed summary judgment in favor of an additional manufacturer noting that the manufacturer "[could not] be held responsible for the asbestos contained in another product," replacement gaskets.[15] The Lindstrom court emphasized that the standard's requirement is that the plaintiff make a showing with respect to *each* defendant's product that the defendant's product was a substantial factor in plaintiff's injury.[16]

This Court has also determined that under maritime law, a defendant is not responsible for injuries caused by component parts which it did not manufacture or distribute. In Ferguson v. Lorillard Tobacco Co., Inc. et al., the plaintiff alleged that Robert Ferguson was exposed to asbestos due to his work on the defendant's pumps during his service in the United States Navy. The Court acknowledged that the defendant's pumps may have been incorporated with asbestos-containing gaskets and packing. However, the Court found that even if the plaintiff worked with the defendant's pumps, there was no evidence that the defendant manufactured or distributed any of that asbestos-containing product. Under maritime law, the Court found that the defendant is not liable for asbestos which was later incorporated into its products and this Court granted summary judgment in favor of the defendant pump manufacturer.[17]

The Southern District of New York recently held that "a manufacturer has no duty to warn against defects in such third-party products so long as the manufacturer had no control over the production of the defective product and did not place it into the stream of commerce."[18] In Surre, Judge Chin held that a defendant boiler manufacturer cannot be held liable for plaintiff's alleged exposure to insulation applied post-sale that was neither manufactured nor supplied by

---

[15] Lindstrom, 496
[16] Lindstrom, 492
[17] See Exhibit "E" Catharine C. Ferguson v. Lorillard Tobacco Co. Inc., et al., NO. 2:09-91161 Order (E.D. Pa. Feb. 28, 2011).
[18] See Exhibit "F", Surre v. Foster Wheeler, LLC, No. 07-cv-9431 Order, (S.D.N.Y. Dec. 20, 2011) at 8.

moving defendant. In reaching its decision, the Court followed the stream-of-commerce test articulated in the New York opinions, Rastelli v. Goodyear Tire & Rubber Co.[19] and Tortoriello v. Bally Case, Inc.[20], to hold under New York Law, moving defendant had no duty to warn against the dangers of asbestos-containing insulation used in conjunction with its product simply because it was "foreseeable" that a third party asbestos-containing product may be used with its boilers.[21] The Surre opinion expressly rejected Plaintiff's theory that foreseeability alone gives rise to a duty to warn.[22]

---

[19] Rastelli v. Goodyear Tire & Rubber Co., 79 NY2d 289, 297-298)
[20] Tortoriello v. Bally Case, Inc., 200 A.D.2d 475 (N.Y. App. Div. 1994).
[21] Surre 2.
[22] Surre 10.

In addition, Defendant anticipates that Plaintiffs may rely on U.S. Navy ship records to show that Buffalo Pumps supplied equipment for installation aboard some U.S. Navy vessels; however, in the absence of witness testimony, Plaintiffs cannot rely on Navy ship records to establish alleged exposure to Buffalo equipment. A mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient."[23] Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'"[24] In *Olivar v. Buffalo Pumps, Inc., et al.,* this Court granted Buffalo Pumps' motion for summary judgment where Plaintiff attempted to overcome Buffalo Pumps' motion with expert affidavits and reports that purported to connect Plaintiff's alleged exposure in the absence of any supporting testimony.[25] Plaintiff cannot use "expert" witnesses to establish "factual" product identification and exposure. *Id.*

Mr. Berei testified that he could not recall any specific ship where he may have encountered a Buffalo Pump. Further, Mr. Berei admitted that he could not recall any occasion for which he was present when someone worked on a Buffalo Pump. (See "A" at 403:25-404:24). Therefore, based on Mr. Berei's testimony, any allegation that he was exposed to an asbestos-containing product attributable to Buffalo Pumps is pure conjecture.

## IV. Plaintiffs Have Not Met Their Burden to Establish Causation Under Maritime Law

Applying the facts of this case to the standards under maritime law, the Plaintiffs simply cannot meet their burden. In Delatte, this Court granted summary judgment in favor of Buffalo Pumps where the Plaintiff remembered working with Buffalo pumps, but could not recall a

---

[23] Restatement (Second) of Torts, §431, Comment "a" (1965)
[24] Id. (quoting Harbour v. Armstrong World Indus., Inc., No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991))
[25] *See* Exhibit "G" – *Olivar v. Buffalo Pumps, Inc.,* No. 2:09-62577 Order (March 29, 2011)

number of times he worked with Buffalo pumps and could not definitively say he worked with a Buffalo pump on even one occasion. Mr. Berei's testimony is far weaker than that of the witness in the Delatte case. The testimony in this matter is wholly inadequate to withstand summary judgment.

Simply put, Mr. Berei could not recall being present anywhere on any occasion when work was performed on a Buffalo pump, much less any work that involved an asbestos-containing product put into the stream of commerce by Buffalo Pumps.  Buffalo is not and cannot be held liable in the absence of such evidence.  The Court has spoken on these exact issues and summary judgment in this case is warranted.

## IV.     Causation Standards Under New York Law

Under New York law, summary judgment exists "to isolate and dispose of factually unsupported claims." Celotex v. Catrett, 477 U.S. 317, 323 (1986).  A motion for summary judgment should be granted when there is no factual dispute and the moving party is entitled to a judgment as a matter of law. See Diel v. Flintkote Co., 204 A.D.2d 53, 611 N.Y.S. 2d 519 (1st Dept. 1994).  As a matter of policy, the Court of Appeals has urged trial courts to grant motions for summary judgment to remove claims from overburdened dockets in negligence actions where non-meritorious causes of action exist. See Blake v. Gardino, 35 A.D. 2d 1022, 315 N.Y.S.2d 973 (3rd Dept. 1970); Andre v. Pomeroy, 35 N.Y.2d 361 (1974).

In order to make a *prima facie* showing of entitlement to summary judgment, the movant must submit evidentiary proof which eliminates all material issues of fact from the case.  See Royal v. Brooklyn Union Gas Co., 122 A.D.2d 132, 504 N.Y.S.2d 681 (2nd Dept. 1986).  Once the movant has demonstrated an entitlement to summary judgment, the burden shifts to the

opposing party to demonstrate the existence of a factual issue requiring a trial of the action, or else tender a reasonable excuse for his failure to do so. Ascher v. Garofolo Elec. Co., 113 A.D.2d 728 (2nd Dept. 1985).  The evidence set forth by the opposing party, to demonstrate the existence of a genuine triable issue of fact, must be made in a non-conclusory, admissible manner. Barilla v. Meredith Corporation, 224 A.D.2d 992, 637 N.Y.S.2d 90 (4th Dept. 1996).

In the context of asbestos litigation,

> …the plaintiff bears the burden of proof to establish that he was actually exposed to the product or products of each defendant, and that this exposure to the defendant's product was at least a substantial contributing factor to the injury.  The usual method of identifying the defendants' products as the proximate harm to the plaintiffs typically depends upon testimony, usually eyewitness testimony of fellow-workers, identifying the defendants' product on the jobsite at the time the plaintiff was employed.

In re New York Asbestos Litigation, 149 F.R.D. 490 (S.D.N.Y. 1993)(citations omitted) (*reversed and remanded on other grounds*).  In other words, the **plaintiff** bears the burden of proving that he was exposed to a specific defendant's product and more likely than not, that specific exposure was a substantial contributing factor to plaintiff's alleged injuries. Cawein v. Flintkote, 203 A.D.2d 105, 610 N.Y.S.2d 487, 488 (1st Dep't. 1994) (at a minimum, plaintiffs must create a reasonable inference that they were exposed to a specific defendant's product); and Diel v. Flintkote Co., 204 A.D.2d 53, 54, 611 N.Y.S.2d 519, 521 (1st Dep't. 1994)(same). Summary judgment is warranted when a plaintiff is unable to establish a connection between a specific defendant and the product that caused the alleged injury. Weinberg v. Johns-Manville Products Corp., 67 A.D.2d 640, 641, 412 N.Y.S.2d 370, 371 (1st Dep't. 1979).

The Court must, then, evaluate opposition papers to determine whether the proofs submitted are capable of being proven at trial. Mahar v. Mahar, 111 A.D.2d 501, 488 N.Y.S.2d

526 (3rd Dept. 1985).  If, upon such review, it is determined that the opposing party has failed to establish a genuine issue of fact, with respect to the movant's negligence, summary judgment must be granted.  Lomnitz v. Woodbury, 81 A.D.2d 828, 438 N.Y.S.2d 825 (2nd Dept. 1981).

As demonstrated below, Defendant has satisfied its burden by showing that no evidence has been presented, during the course of discovery, to establish that a product manufactured, sold, distributed and/or installed by Buffalo Pumps caused the Plaintiff's injury.  The burden now successfully shifts.  Plaintiff now has the burden of demonstrating that Mr. Berei was actually exposed to asbestos fibers released from an asbestos-containing product attributable to Buffalo Pumps in order to defeat this motion for summary judgment.  Plaintiff has not set forth one scintilla of evidence to establish a nexus between Mr. Berei's illness and product sold, distributed, installed and/or manufactured by Buffalo Pumps.

Mr. Berei admitted that he could not recall any occasion for which he was present when someone worked on a Buffalo Pump.  (See "B" at 403:25-404:24).  Therefore, based on Mr. Berei's testimony, any allegation that he was exposed to an asbestos-containing product attributable to Buffalo Pumps is pure conjecture.  **Plaintiff offered no testimony that he worked with or around any equipment manufactured by Moving Defendant, Buffalo Pumps.**

The law is overwhelmingly clear.  The plaintiff must demonstrate that he was exposed to asbestos fibers originating from a Buffalo Pumps product.  That certainly has not been done.

WHEREFORE, for the reasons stated herein, Defendant Air and Liquid Systems, Inc. as successor by merger to Buffalo Pumps Inc., requests that this Court enter Summary Judgment in

its favor as to all of Plaintiff's claims, and grant any and all other relief as this Court deems just and proper.

Dated:  April 15, 2013

Respectfully submitted,

**WILBRAHAM, LAWLER & BUBA**

By: */s/ John S. Howarth, Esquire*
    John S. Howarth, Esquire
    Attorney for Defendant,
    Air & Liquid Systems Corporation as
    successor by merger to Buffalo Pumps

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS** | : | |
| **LIABILITY LITIGATION (No. VI)** | : | Consolidated Under |
| | : | MDL DOCKET NO. 875 |
| **JOHN T. BEREI,** | : | |
| | : | E.D.Pa Civil Action No. |
| Plaintiff, | : | 2:11-cv-60166-ER |
| | : | |
| v. | : | Transferor District Court |
| | : | for the Southern District of New York |
| **AIR & LIQUID SYSTEMS CORP., et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

This matter having been brought before the Court by John S. Howarth, Esquire, of the firm of Wilbraham, Lawler & Buba, attorneys for defendant Air & Liquid Systems Corporation, and the Court having considered the application and opposition filed herein and upon good cause being shown;

IT IS on this _____ day of _____, 2013, ORDERED that defendant Air & Liquid Systems Corporation's Summary Judgment Motion is GRANTED and all claims and cross-claims against Air & Liquid Systems Corporation as successor by merger to Buffalo Pumps Inc. are dismissed with prejudice.

_____
                                                                                                                   J.

## CERTIFICATE OF SERVICE

**I HEARBY CERTIFY** that on this 15th day of April, 2013, a copy of the foregoing **Motion for Summary Judgment, Memorandum of Law, and Proposed Order** was filed electronically this day and is available for viewing from the Court's ECF system. Notice of this filing will be sent to all counsel of record via the Court's ECF system.

     /s/ *John S. Howarth*
John S. Howarth, Esquire
I.D. No. 67875
1818 Market Street, Suite 3100
Philadelphia, PA 19103
215-972-2848
jhowarth@wlbdeflaw.com

Dated:  April 15, 2013